# Muse *v.* Dantzler.

*Action on Note (or Writing) under Seal.*

1. *Promissory note; writing under seal.*—A written instrument in the form of a promissory note, but under seal, is not a promissory note, and is not governed by the commercial law, as made applicable by statute (Code, § 1756) to "bills of exchange and promissory notes payable in money at a bank," &c.

2. *Estoppel against maker of note, as in favor of assignee or purchaser.* When the purchaser of a promissory note takes it on the faith of the maker's promise to him to pay it, the maker is estopped from setting up against him, in defense of an action on the note, either fraud in the original contract, or a subsequent failure of consideration; but, where the maker is requested by the payee to execute a new note, payable in bank, and containing a waiver of exemptions, in order that he may effect a trade with a third person, who would not take the original note without such terms, and it is afterwards used and transferred by him in

[Muse v. Dantzler.]

making the desired trade, the maker is not estopped from setting up against the purchaser a subsequent failure of consideration.

APPEAL from the Circuit Court of Autauga.

Tried before the Hon. JAMES R. DOWDELL.

This action was brought by John T. Muse against S. D. Dantzler, was commenced on the 29th March, 1887, and was founded on the defendant's writing obligatory, or promissory note under seal, which is copied in the opinion of the court. The defendant pleaded, "in short by consent," a failure of consideration; and issue was joined on this plea, after demurrer overruled. On the trial, as the bill of exceptions shows, the plaintiff having read in evidence the written instrument sued on, and its assignment to himself, the defendant offered evidence as to the consideration of the note, the representations of the payees at the time the contract was made, and the failure of consideration, growing out of the worthlessness of the patent right the purchase of which constituted the consideration; and he also testified as to the circumstances under which the writing here sued on was given, in lieu of the original note, as the same are stated in the opinion of the court. The plaintiff objected to the admission of the evidence as to the consideration, or the failure thereof, and reserved exceptions to the overruling of his objections. On the evidence adduced, all of which the bill of exceptions purports to set out "substantially," "the court charged the jury, *ex mero motu*, that the instrument sued on was not governed by the commercial law; that the plaintiff could not be considered a *bona fide* holder for value without notice of equities or defenses against the payees; that the defendant might, in defense of the action, set up any defense which would have availed him against Philpot & Co., if they were suing instead of plaintiff." The plaintiff excepted to this charge, and requested the following charges in writing: (1.) "If the jury believe the evidence, they must find for the plaintiff." (2.) "If the jury believe from the evidence that the instrument sued on was given by defendant to Philpot & Co., in lieu of a plain note theretofore executed by him to them, for the same amount; and that said instrument was thus executed at a different place, and a week or ten days after the first note was made; and that Philpot told defendant at that time that he wanted a note payable in bank, with a waiver of exemptions, in order to trade the same for a pair of mules; then, on this state of facts, without more, the de-

[Muse v. Dantzler.]

fendant is estopped from setting up a failure of consideration of said instrument, if the jury further believe that said Philpot did thereupon trade said written instrument to plaintiff for a pair of mules." The court refused each of these charges, and the plaintiff excepted to their refusal. These several rulings adverse to plaintiff are now assigned as error.

RICE & WILEY, for the appellant, cited Chitty on Bills, 166, mar., 13th Amer. ed.; *Avery v. Latimer*, 14 Ohio, 542; *Blackwell v. Hamilton*, 47 Ala. 471; Wait's A. & D. vol. 1, pp. 688–9; *Mercer County v. Hackett*, 1 Wall. 95; *Auerbach v. Pritchett*, 58 Ala. 457; *Prickett v. Sibert*, 75 Ala. 318; *Humphreys v. Finch*, 2 Amer. Rep. 293; 16 Wall. 1.

W. A. GUNTER, *contra*, cited *Reed v. Scott*, 30 Ala. 640; *McCrummen v. Campbell*, 82 Ala. 566.

CLOPTON, J.—Appellant seeks by the action to recover on a written instrument, of which the following is a copy:
　　"$300.00.　　Montgomery, Alabama, March 8, 1886.
"On the first of Nov. next, I promise to pay to the order of Philpot & Co. three hundred dollars, for value received, at Merchants and Planters' Nat'l Bank; and for the faithful payment of this note I hereby waive all exemption laws of the State of Alabama, or of the United States, as against the payee or assignee of this note, in regard to the collection thereof. Given under my hand and seal, this 8th day of March, A. D. 1886."
　　　　　　"S. D. DANTZLER, (L. S.)"
The instrument was transferred and assigned by the payees to the plaintiff, March 16, 1886. Two questions arise on the instructions of the court to the jury: first, whether the instrument falls within the provisions of section 2094 of Code of 1876; second, whether the defendant is estopped by his conduct, shown by the evidence, from setting up against the plaintiff the defense of failure of consideration.

Section 2094 declares: "Bills of exchange, and promissory notes payable in money at a bank or private banking-house, or a certain place of payment therein designated, are governed by the commercial law." The statute is an innovation of the common law, and should not be construed as infringing its rules and principles further than is expressed, or may be fairly implied, to give its terms full effect, and

[Muse v. Dantzler.]

to accomplish its purpose. At common law, sealing was an essential and distinctive requirement to constitute a bond; and under the mercantile law, sealing an instrument, though otherwise corresponding in form, deprived it of the character of a promissory note. Though an instrument under seal for the payment of money, without condition, at a specified time, is sometimes designated as a note under seal, there is a well defined distinction between such instrument and a promissory note. Early after the Code of 1852 took effect, it was said substantially, that the distinction between sealed and unsealed instruments is not altogether destroyed by the Code. In *Reed v. Scott*, 30 Ala. 640, the complaint described the instrument sued on as a promissory note. The instrument offered in evidence under the complaint was in form a promissory note, except that it was under seal. It is said: "A bond can not, with strict legal propriety, be termed a promissory note; and they have always been distinguished in the incidents which attach to them. The instrument sued upon, being described as a promissory note, was not the instrument offered in evidence, because the latter is a bond." The same ruling was re-affirmed in *Mc-Crummen v. Campbell*, 82 Ala. 566. The instrument sued upon not being a promissory note, in the legal sense of the term, is not exempted by the provisions of section 2094, in the hands of the plaintiff, though he may have acquired it before maturity without notice, from defenses of the maker against the payee growing out of the original contract.—*Merritt v. Cole*, 9 Hun, 98; *Sayre v. Lucas*, 2 Stew. 259.

The estoppel on which plaintiff relies is based on the following facts: The defendant gave Philpot & Co. a promissory note for three hundred dollars, as the consideration price of the exclusive right to sell a certain patent in several counties in the State. A week or ten days after this note was given, Philpot, one of the payees, called on defendant, and told him that he was anxious to trade the note for a pair of mules, but that the owner of the mules would not trade for the note, unless it was payable in bank, and contained a clause waiving exemptions of personal property, and requested defendant to take back the first note, and execute "a waiver note in bank." In order to accommodate Philpot, defendant executed the instrument sued on, and took up and destroyed the first note. Soon thereafter, Philpot traded the instrument sued on to plaintiff, for a pair of mules. An estoppel *in pais*, as generally defined, occurs

[Muse v. Dantzler.]

when a party by his acts, words, or silence, causes another to believe in the existence of a certain state of things, and such person on the faith thereof acts, or omits to act, or alters his previous condition. The doctrine rests on considerations of equity and good faith—of fair dealing. An owner of property, who is present, and knowing his claim and concealing it, passively causes another to purchase and part with his money, will not be allowed, because of the fraud and injustice, to assert afterwards his right against such purchaser. To create an estoppel by representation or suppression, ordinarily the representation must have been made, or the concealment committed, with knowledge of the material facts, and the other party must have been induced to act thereby with confidence in its truth.—*Leinkauff v. Munter*, 76 Ala. 194. The special charge requested by plaintiff recites substantially the facts stated above, and concludes by asserting the legal proposition, that on these facts, *without more*, the defendant is estopped from setting up a failure of consideration, if the payee thereupon traded the instrument to plaintiff for a pair of mules. The charge omits from its hypothesis the essential elements, that defendant had knowledge of the defense at the time, and the plaintiff was induced to purchase the note by such representation. All the facts stated in the charge may be true, and all the essential elements of an estoppel by conduct not be present.

But the plaintiff also asked an affirmative charge, which brings up the question, whether, as matter of law, the undisputed facts estop the defendant from setting up a failure of consideration. It may be regarded a settled rule, that when a note is purchased on the faith of a promise by the maker to pay it, the latter is estopped from asserting the invalidity of the note, as between himself and the payee, whether on the ground of fraud in the original contract, or of subsequent failure in the consideration.—*Cloud v. Whiting*, 38 Ala. 57. If the bond sued on had been made payable to the plaintiff, with a view to its delivery to him, or the defendant had promised in any other manner to pay it, the case would have come under the influence of the rule established in the case last cited.—*Allen, Bethune & Co. v. Maury & Co.*, 66 Ala. 10. But the bond was made payable to Philpot & Co.—a promise to them to pay it. It had no greater effect as a promise to pay the plaintiff, than the first note would have had if he had traded for that.

[Muse v. Dantzler.]

The plaintiff did not apply to defendant for ·a promise to pay, or for information as to any defenses. They had no personal interview. The instrument in writing being the only medium of communication between them, its terms must be looked to, and from them ascertained the character and extent of the declarations, admissions and representations made by defendant. It is an acknowledgment of indebtedness, and a promise to pay to the order of the payees at the time specified. It has the same, and no other or greater force, than would have been accorded to the statements contained therein, if they had been directly communicated to plaintiff in answer to an inquiry before acquiring the note.—*Prickett & Maddox v. Sibert*, 75 Ala. 315. The bond, speaking by itself, constitutes an admission of indebtedness, and, under the circumstances, a representation that there is no defense. A well defined distinction exists between cases where one purchases a note on the faith of a promise of the maker to pay it, and where it is purchased on the faith of a mere representation of the maker as to defenses. When the maker is applied to for information, by one intending to purchase a note, and represents that there is no defense, he will be precluded from setting up against the purchaser any defense which existed at that time, and was within his knowledge; but he will not be estopped from making a defense, which subsequently arises out of the original contract, and was unknown to him at the time he made the statement.—*Clements v. Loggins*, 2 Ala. 514; *Maury v. Coleman*, 24 Ala. 381; *Cloud v. Whiting, supra*. There is no evidence tending to show that the defendant knew of the defense now set up, when he executed the instrument sued on.

Moreover, it can not be deduced as a legal conclusion from the facts and circumstances, that the plaintiff regarded the execution of the bond as a promise to pay him, or as a representation that there was no defense against it. He merely required a paper payable at bank, and containing a waiver of exemptions, evidently supposing that, if so payable, all defenses of the maker against the payees would be cut off, and that the waiver would increase the security. These were the considerations which moved him to accept a transfer and assignment of the paper. The act of defendant in executing the instrument sued on in lieu of the first note, does not, of itself, under the circumstances, estop him from setting up the defense of failure of consideration, which subsequently

arose out of the original contract, and was unknown to him at the time.

The severa motions to exclude evidence were properly overruled. It was competent for the defendant to show the consideration of the bond, and its total failure. Properly construed, the bill of exceptions does not show that the worthlessness of the machine was proved by the opinion of the witness, but that facts were shown which tended to establish its worthlessness.

Affirmed.